UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEOBARDO E., an Individual, | Case No.: 2:25-01065 ADS |
| Plaintiff, | |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

## I.   <u>INTRODUCTION</u>

Plaintiff Leobardo E.[1] ("Plaintiff") challenges Defendant Frank Bisignano, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for Supplemental Security Income ("SSI").  (Dkt. No. 1, Compl.) Plaintiff contends that the Administrative Law Judge ("ALJ") erred by (1) finding that

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

-1-

Plaintiff did not have severe physical impairments that would impact Plaintiff's ability to work; (2) failing to reconcile Plaintiff's moderate limitations in adapting and managing oneself with the absence of correlating limitations; and (3) failing to accept Plaintiff's subjective allegations without properly considering them and without providing clear and convincing reasons.  (Dkt. No. 17.)  For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed.

## II.    PROCEEDINGS BELOW

### A.    Procedural History

Plaintiff filed his SSI application on January 25, 2022.  (Administrative Record "AR" 17.)  In his application, Plaintiff alleges disability beginning on May 12, 2015.  (AR 17, 216.)  Plaintiff's application was denied initially on September 28, 2022, and upon reconsideration on November 18, 2022.  (AR 77, 94.)  Thereafter, Plaintiff timely filed a Request for Hearing that was received on January 2, 2023.  (AR 17.)  A telephonic hearing was held on November 29, 2023, before ALJ Barbara Dunn.  (Id.)  On April 19, 2024, the ALJ issued an unfavorable decision.  (AR 14-27.)  The ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act ("SSA").[2]  (Id.)  Plaintiff then filed a timely Request for Review of Hearing Decision on May 13, 2024.  (AR 206-207.)  The Appeals Council denied review on January 3, 2025.  (AR 1-3.)

Plaintiff then filed this action in District Court on February 7, 2025, challenging the ALJ's decision.  (Compl.)  On April 11, 2025, Defendant filed an Answer, as well as a copy of the Certified Administrative Record.  (Dkt. No. 12.)  Plaintiff filed an Opening

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

Brief on June 3, 2025.  (Dkt. No. 17, Op. Br.)  Defendant filed its Brief on June 18, 2025. (Dkt. No. 19.)  Plaintiff filed a Reply Brief on July 2, 2025.  (Dkt. No. 20.)  The case is ready for decision.[3]

### B.    Statement of Facts

Plaintiff alleges disability beginning May 12, 2015 due to anxiety, depression, and panic attacks.  (AR 62-65.)  At the time the ALJ issued her decision, Plaintiff was 41 years old.  (AR 26-27.)  Plaintiff has a high school education and previously worked as a forklift operator.  (AR 277.)  Plaintiff began treatment with Kaiser Permanente on May 27, 2014.  (AR 375.)  From the beginning of his treatment through 2022, Plaintiff had a recorded body mass index ("BMI") of between 31.66, (AR 1278), and 38.9, (AR 1456), which is classified as obese.  Plaintiff has two previous recorded surgeries.  In 2014, Plaintiff underwent surgery on his left shoulder.  (AR 731.)  On January 20, 2017, Plaintiff had a bilateral microscopic varicocelectomy.  (AR 383.)

Between 2015 and 2022, Plaintiff received a series of diagnoses.  On January 12, 2017, Plaintiff was diagnosed with scrotal varices, hypertension, hyperlipidemia, male infertility, alcohol abuse (mild use disorder), panic disorder, anxiety disorder, and obesity.  (AR 804.)  On May 16, 2017, Plaintiff was diagnosed with acute upper respiratory infection.  (AR 803.)  On May 11, 2018, Plaintiff was diagnosed with shortness of breath.  (AR 802.)  On April 5, 2019, Plaintiff was diagnosed with hypertension; panic disorder; hyperlipidemia; major depressive disorder, recurrent episode, severe; alcohol abuse (mild use disorder); and gout.  (AR 800-01.)  On

---

[3] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. (Dkt. Nos. 8, 10.)

September 21, 2021, Plaintiff was diagnosed with anxiety; gout; hypertension; hyperlipidemia; major depressive disorder, recurrent episode; male infertility; alcohol abuse (mild use disorder); obesity; and panic disorder.  (AR 415.)  As of August 8, 2022, Plaintiff was prescribed Ketotifen, Benzonatate, Colcicine, Chlorpheniramine, Albuterol, Bactrm, Celexa, Xanax, and Prinivil, as well as taking a number of over-the-counter medication.  (AR 1586-89.)  On April 9, 2023, Plaintiff was prescribed chlorpromazine for gout.  (AR 1636.)

On January 16, 2024, Plaintiff had an internal medical evaluation performed by Nurse Practitioner Medina, who reported that Plaintiff was able to get on and off the examination table without difficulty and did not require a cane or walker.  (AR 1962.) Medina diagnosed Plaintiff with hypertension and found that Plaintiff can carry 100 pounds occasionally, 50 pounds frequently, and can stand and walk for eight hours in an eight-hour day.[4]  (Id.)

On January 27, 2024, Plaintiff underwent psychiatric evaluation with Dr. Bhavsar.  (AR 1969.)  Dr. Bhavsar noted that Plaintiff is currently not working because he experiences anxiety and has panic attacks which render him unable to leave the house.  (AR 1971.)  Dr. Bhavsar noted that Plaintiff underwent shoulder surgery in 2014 and found that Plaintiff's past medical history is significant for high blood pressure, gout, cholesterol problems, and back pain.  (Id.)  Dr. Bhavsar found that Plaintiff is currently taking Xanax, Pantoprazole, Amlodipine, and Lisinopril.  (Id.)  Dr. Bhavsar diagnosed Plaintiff with major depression, recurrent; panic disorder with agoraphobia; and marijuana use disorder; problems related to social environment; and "other

---

[4] Medina noted that this report is not intended to be a complete physical examination for health purposes.  (Id.)

psychosocial and environmental problems." (AR 1973.)  Dr. Bhavsar reported moderate limitations in Plaintiff's ability to interact appropriately with the public, co-workers, and supervisors; moderate limitations in Plaintiff's ability to comply with job rules such as safety and attendance; moderate limitations in Plaintiff's ability to respond to changes in a routine work setting; and moderate limitations in Plaintiff's ability to respond to work pressure in a usual setting.  (AR 1974.)

**C.      Summary of ALJ Decision After Hearing**

In her decision, (AR 17-27), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.[5]  20 C.F.R. § 404.1520(a) and § 416.920(a).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 25, 2022, the amended alleged onset date.  (AR 19.)  At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) panic disorder; (b) generalized anxiety disorder ("GAD"); (c) depressive disorder; and (d) cannabis use disorder.  (AR 19.)  At **step three**, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.  (AR 20.)  At **step four**, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

---

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four. Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

perform medium work[6] as defined in 20 C.F.R. § 404.1567(c), with certain limitations. (AR 21.)  Specifically, the ALJ found that Plaintiff is able to:

> push, pull, lift and carry 50 pounds occasionally, 25 pounds frequently, standing and/or walking for 6 hours during an 8-hour workday, sitting for 6 hours. The claimant can frequently reach, climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but is limited to occasional climbing ropes, ladders or scaffolds, and exposure to workplace hazards. The claimant is limited to simple routine work, with no fast-paced production requirements, no public contact and only occasional coworker and supervisor contact.

 (AR 21.)  At **step five**, based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that the record does not establish work at substantial gainful activity levels in the past fifteen years, and therefore no past relevant work is established.  (AR 25.)  However, the ALJ concluded that there are jobs Plaintiff can perform based on his age, education, work experience, and RFC, such as store laborer, motor vehicle assembler, or polisher.  (AR. 26.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the SSA, from January 25, 2022, through the date of his decision, April 19, 2024.  (AR 26-27.)

III.   **ANALYSIS**

Plaintiff raises three issues for review: (1) whether the ALJ erred in finding that Plaintiff's physical impairments were not severe; (2) whether the ALJ erred in failing to properly reconcile Plaintiff's moderate limitations in adapting and managing oneself with the absence of correlating limitations; and (3) whether the ALJ erred in failing to

---

[6] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires that a person be able to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday.  SSR 83-10; Candia v. Sullivan, 959 F.2d 239, 239 (9th Cir. 1992).  "If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

accept that Plaintiff's subjective allegations without properly considering them and without providing clear and convincing reasons.  (Op. Br. at 6.)

### A.  Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

### B.  The ALJ Properly Considered Plaintiff's Physical Impairments at Step Two

Plaintiff argues that the ALJ erred in concluding that Plaintiff did not have severe physical impairments at step two despite evidence to the contrary.  (Op. Br. at 10-15.)  Plaintiff states that the ALJ noted in her decision Plaintiff's history of shoulder surgery and that he has been receiving treatment for gout, gastroesophageal reflux disease, hypertension, and hyperlipidemia.  (Id.; AR 20.)  Plaintiff argues that the combination of gout, obesity, dizziness from hypertension, and residuals following shoulder surgery preclude "weeding this case out as establishing only 'the most minor impairments'" under step two.  (Op. Br. at 13.)  Plaintiff argues that these physical impairments satisfy

the de minimis standard required of step two and that the ALJ's findings tainted the remainder of the steps in her evaluation process.  (Id.)  Defendant argues the ALJ reasonably considered Plaintiff's physical impairments and reasonably found Plaintiff's physical impairments to be not severe.  (Dkt. No. 19 at 2-3.)

### 1.  Legal Standard

Step two is a "de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  At step two of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically determinable impairment or combination of impairments that meets the durational requirement.  See 20 C.F.R. § 416.920(a)(4)(ii).  "A physical or mental impairment must be established by objective medical evidence from an acceptable medical source," and, once established, the ALJ determines whether the impairment is severe.  20 C.F.R. § 416.921.  In assessing severity, the ALJ must determine whether the claimant's medically determinable impairment or combination of impairments "significantly limits his ability to do basic work activities."  See Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Basic work activities include "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 140.1521(b).  "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Id. (quoting Smolen, 80 F.3d at 1290) (emphasis in original).  "[P]roperly denying a claim at step two requires an unambiguous record showing only minimal limitations."  Glanden v. Kijakazi, 86 F.4th 838, 844 (9th Cir. 2023).

"If an ALJ finds a severe impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis." Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1228 (9th Cir. 2009); see also 220 C.F.R. § 416.923. But an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). "Step two is merely a threshold determination meant to screen out weak claims." Id. at 1048. "It is not meant to identify the impairments that should be taken into account when determining the RFC." Id. at 1048-49. The RFC and continuing analysis should therefore be the same "regardless of whether certain impairments are considered 'severe' or not." Id. at 1049.

### 2.   The ALJ Properly Considered Plaintiff's Physical Impairments

Here, the ALJ found that Plaintiff does not have a severe physical impairment, but did find that Plaintiff has other severe impairments, including panic disorder, GAD, depressive disorder, and cannabis use disorder. (AR 19.) Moreover, the ALJ did address and consider Plaintiff's physical impairments such as gout, dizziness, and pain from his past shoulder surgery in the RFC. (See AR 24-25.) Plaintiff argues that the ALJ's alleged error in finding that Plaintiff does not have a severe physical impairment tainted the remainder of the ALJ's analysis. (Op. Br. at 14-15.)

Plaintiff contends that his "combination of gout, obesity, dizziness from hypertension, and residuals following a shoulder surgery preclude weeding this case out as establishing 'the most minor of impairments.'" (Id. at 13.) Defendant argues that the ALJ properly considered these impairments and deemed them "not severe" because the "treatment associated with these conditions has been isolated and transitory" and "these conditions are essentially asymptomatic." (Dkt. No. 19 at 7-8; AR 20.)

The Court finds that the ALJ properly considered Plaintiff's physical impairments at step two.  The ALJ noted in her decision that the examining medical consultant opined that "the claimant retains the capacity to perform heavy work" and that "counsel indicated that the claimant's significant impairments are psychiatric, and that they were not contending that [Plaintiff] has a significant physical impairment." (AR 20.)  Moreover, the ALJ noted each of Plaintiff's physical injuries and determined each condition to be "isolated and transitory." (Id.)  The ALJ also noted that many of Plaintiff's cited physical conditions are "essentially asymptomatic." (Id.)  Therefore, the ALJ properly considered Plaintiff's physical impairments in deeming the impairments to be not severe.

The ALJ also properly considered these impairments at later steps in the analysis, continuing to note Plaintiff's physical impairments in the RFC.  (See AR 21-22.)  Plaintiff cites a case from the Southern District of California which remanded a finding of no physical impairment on the basis that the record was ambiguous about treatment.  (Op. Br. at 14 (citing Miguel S. v. O'Malley, No. 23-01943 MMA (DDL), 2024 WL 4643098, at *6 (S.D. Cal. Oct. 30, 2024))).  However, the ALJ in Miguel S. found no severe impairment, effectively ending the analysis at step two.  Id. at *5.  Here, the ALJ did find severe impairment and properly considered all evidence, including Plaintiff's physical impairments not deemed severe, in the RFC.  (See AR 21-24.)  Thus, the ALJ did not err at Step Two.

**C.    Plaintiff's RFC is Supported by Substantial Evidence**

Plaintiff asserts the ALJ failed to reconcile her findings of moderate limitations in adapting and managing oneself with the absence of correlating limitations in the RFC.  (Op. Br. at 15.)  Specifically, Plaintiff notes that the ALJ recognized a mental

impairment, but the RFC only states that Plaintiff is limited to simple routine work, with no fast-paced production requirements, no public contact, and only occasional coworkers and supervisor contact. (Id. at 16.) Plaintiff argues these limitations do not adequately accommodate the ALJ's findings of moderate limitations in concentration, persistence, or maintaining pace. (Id.) Additionally, Plaintiff asserts the RFC contains no limitations regarding Plaintiff's moderate limitations in adapting and managing oneself. (Id. at 17.) Plaintiff argues that this discrepancy altered the information provided in the RFC to the vocational expert ("VE"), and the ALJ failed to explain this discrepancy. (Id. at 20.) Defendant argues that the ALJ reasonably accounted for Plaintiff's mental limitations in the RFC because the RFC is supported by substantial evidence. (Dkt. No. 19 at 7-8.)

### 1.   Legal Standard

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p; see also 20 C.F.R. § 404.1545(a). In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." Id.; see also Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (holding that "an RFC that fails to take into account a claimant's limitations is defective"); Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (explaining it is error to assess an incomplete RFC that ignores "significant and probative evidence").

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. See 20 C.F.R. § 404.1546(c). The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating

and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015); see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). The ALJ's RFC assessment should be affirmed if the ALJ applied the proper legal standard and the decision is supported by substantial evidence in the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

### 2.   The ALJ Properly Assessed Plaintiff's RFC

In setting forth her assessed RFC of Plaintiff, the ALJ stated she "considered all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 416.929 and SSR 16-3p." (AR 21.)  The ALJ also confirmed she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 [C.F.R. §] 416.920c." (Id.)

The ALJ addressed in her analysis a finding of moderate limitation in "judgment, impulse control, insight and concentration." (AR 21; Ex. 1F, pp. 33, 39, 51, 76, 87, 93, 102.)  The ALJ noted that Plaintiff's medical records often describe Plaintiff's insight, judgment, and impulse control as "average or unimpaired." (AR 22; Exhibit 3F, pp. 217, 294, 315, 349; 2F, p. 12; 1F, pp. 22, 33, 38, 50, 65, 76, 93, 110.)  The ALJ finds that only twice was Plaintiff's concentration described as moderately impaired and once described as severely impaired. (AR 22; Ex 1F, pp. 18, 27, 87.)  The ALJ notes that she has included restrictions to accommodate Plaintiff's moderate limitations in concentration, memory, and other cognitive defects in the RFC and found that Plaintiff demonstrates marked limitations with public interaction. (AR 23-24.)  Additionally, the ALJ states

that she has found moderate limitations in Plaintiff's persistence and ability to maintain pace, because of anxiety and panic conditions and usage of Xanax and marijuana, and has included this in the RFC.  (Id. at 23.)

The ALJ also addressed Plaintiff's limitations with adapting and managing oneself.  The ALJ found that the record reflects Plaintiff "has some difficulty but that he has been able to develop a level of functioning with the use of Xanax and marijuana to manage and limit his symptoms."  (AR 24.)  The ALJ cited assessments by DDS reviewers and consultative examiners and Plaintiff's known activities such as dog breeding as evidence of Plaintiff's ability to adapt and manage oneself.  (Id.)  The ALJ addressed this alleged limitation and incorporated it into the RFC analysis.  (See AR 21-23 (citing Plaintiff's medical records and testimony to support the RFC.))  Therefore, Plaintiff's RFC is supported by substantial evidence.

**D.      The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff argues that the ALJ rejected Plaintiff's subjective allegations without properly considering them and without providing clear and convincing reasons for rejecting his testimony.  (Op. Br. at 21.)  Plaintiff asserts that the ALJ's analysis merely recites Plaintiff's subjective allegations, and points to no genuine inconsistencies in the record to support rejecting Plaintiff's testimony.  (Id. at 22.)  Defendant argues that the ALJ sufficiently discussed objective medical evidence that contradicted Plaintiff's claims.  (Dkt. No. 19 at 9-10.)

1.   Legal Standard

A claimant carries the burden to produce objective medical evidence of his or her impairments and show that the impairments could reasonably be expected to produce some degree of the alleged symptoms.  Benton ex rel. Benton v. Barnhart, 331 F.3d

1030, 1040 (9th Cir. 2003).  Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain.  Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted).

After a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton, 331 F.3d at 1040; see also SSR 16-3p (findings "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms").  To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so."  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); see also Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the

-14-

claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he or she complains. Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792).

### 2.   The ALJ Properly Considered Plaintiff's Testimony

Here, the ALJ addressed Plaintiff's testimony in the RFC analysis. The ALJ noted inconsistencies between Plaintiff's subjective allegations and the objective evidence. (AR 24-25.) Specifically, the ALJ noted that while Plaintiff alleged shoulder pain, gout, and panic and anxiety disorders, the objective evidence does not support that Plaintiff is actively working toward caring for these disorders. (AR 24.) The ALJ found that Plaintiff's medical records do not reflect that Plaintiff had issues with gout during the relevant time periods. (Id.) Further, the ALJ found that Plaintiff has not sought treatment for shoulder pain or related symptoms during the relevant time periods and has received "little in the way of medical treatment or care for neck or back pain." (Id.) Regarding Plaintiff's panic and anxiety symptoms, the ALJ found that while Plaintiff has received therapy for these symptoms, the record reflects that Plaintiff has not performed the "homework" associated with these therapy sessions. (Id.) Moreover, the ALJ noted that there is evidence that Plaintiff prioritizes breeding and caring for dogs over therapy, including stating that he could not attend therapy sessions in the morning because "he is busy with his dogs." (AR 24-25.) Finally, the ALJ addressed Plaintiff's claim that he cannot walk more than 5 yards at a time before needing to rest because he gets dizzy. (AR 25.) The ALJ found that while the record as a whole does not reflect restrictions to the degree alleged, she did include physical restrictions in the RFC to address this. (Id.)

The ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective allegations.  In discounting Plaintiff's testimony, the ALJ identified specific, clear, and convincing reasons to support a finding that Plaintiff's limitations were not as severe as he claimed.  See Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").  "The standard isn't whether [the Court] is convinced, but instead whether the ALJ's rationale is clear enough that is has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).  "Ultimately, the 'clear and convincing' standard requires an ALJ to show [her] work."  Id.  Here, the ALJ cited clear and convincing examples across the relevant parties contrasting Plaintiff's subjective allegations with objective medical evidence.  (See AR 24-25 (noting key points of Plaintiff's testimony and addressing why she rejects such testimony.))  Therefore, the ALJ properly evaluated Plaintiff's testimony.

**IV.    CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.

DATE: March 30, 2026

_____/s/ Autumn D. Spaeth_____
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge

-16-